May it please the Court, I'm William Kopenny for the Appellants, and with me at counsel table is Harlan Braun, who my intention is to share three minutes of the initial opening argument with him, then to reserve five minutes. I'm bad at keeping those intentions, but I'm just letting you know what I'm hoping to do. In this case, we have raised several constitutional arguments, but they all relate to the central question of what must the government prove in order to obtain a conviction for the crime that was charged and that was in the verdicts in this case. And this was a misdemeanor, as defined by the instructions, a misdemeanor failure to pay tax on time. And I'm emphasizing the fact that there was no evidence or claim by the government that there was any fraud, any failure to file, or any evasion of taxes, which could be felonies, and which in the – on the record we quoted in the briefs, the trial judge said the government didn't make those charges because it couldn't prove those things. So what we are asking this Court to do is to – Well, we don't really know that because, of course, the Court hadn't seen whatever the government's proof might have been. I mean, that's an observation I think should be viewed as probably unlikely that the government could have proven it, but it's not determined by the judge. Your Honor, the district judge may have been speculating about the government's did, but in any event, this is not a case where the government pled or proved the greater charges, the greater tax offenses that could also be sentenced under the same guidelines that was used in this case. But we have focused on five cases in our briefs that we believe establish that in a tax case, where the question is whether or not the defendant knew that it was a crime to not do what he did, and he didn't do, or to engage in the conduct that he did, that the general presumption of knowledge of the law does not apply. And those five cases are Cheek and Ratzlaff, and then I'm not sure if I can say this case right. It's United States v. Vessarachis. It's a Ninth Circuit case cited in our brief but not discussed by the government. And then a case called United States v. Frick, a 1999 F-sub case from the District of Nebraska. In various contexts, those courts have agreed with the appellant's interpretation of Cheek and Ratzlaff that in these unique circumstances, and particularly in tax cases, the government needs to prove more than just willful under the general definition of willful, but needs to prove that the person is aware that their conduct is a crime and that they're willfully engaging in conduct that is a crime. We also have relied in the ---- Why is this offense like the offense ---- let's start with Cheek, maybe the biggest case. Aren't those offenses pretty different? Your Honor, I'm so sorry. I could not make out your question. You can pick any of the cases, but I guess I'll start with Cheek. And it seems to me the offense in this case is markedly different than the offense that was at issue in Cheek. I'm not sure why we should think that people believe they're allowed to not pay taxes without ill consequences. Your Honor, I don't think that we believe that people think they're allowed to not pay taxes, but we do believe that they're allowed to not pay taxes on time without being guilty of a crime. Well, see, that starts to differentiate the facts of this case, I think, from Cheek, because Cheek is a structuring case, behavior that doesn't by itself suggest any unlawful or improper conduct. Your Honor, paying late doesn't by itself suggest any criminal conduct. The IRS ---- You keep inserting criminal. I'm making it broader, because I think the question is, should the person know that something is amiss? And in the case of not paying the taxes, shouldn't the person know, gee, you're supposed to pay your taxes, and if you're not pleading poverty, if you're spending money on something else, you just elect not to pay the taxes, that's not an option the government hands out. Your Honor, there's actually only one case that addresses that issue, and it's a district court case that I don't think is dispositive here, but it says you don't have to make a choice to pay the government rather than to spend money on something else in order to avoid criminal liability. But in answer to your question, we also relied on two cases where we look at what the government actually says to people. What does the government say to taxpayers? Now, these are not tax cases, but they're due process cases. Kennedy. Well, didn't your defendants know that they had a legal duty to file and pay? Your Honor, only Mr. Awan testified in this case, and he said he knew he had a duty to pay. And the question of whether he had a duty to file was not either disputed or litigated. But this case is very narrow in that it – he wasn't convicted for not paying. He was convicted for not paying timely. The jury instructions are very clear that on April 16th he was guilty of a crime. But he knew he had a – he knew he had a legal duty to pay on April 15th. Just as, of course, every person has a legal duty under a contract to perform all sorts of things, but he clearly did not know that he had a duty that was subject to a criminal sanction. Well, this isn't a contract. This is a statutory mandate. Right. Of course, Your Honor. You can't file and pay on April 15th or you get an extension. Right. And need to do that. Under – under this – these instructions, if you get an extension, you're guilty of the crime of failure to pay on time. There was – in fact, these defendants got extensions. But they were convicted of not paying on April 15th of the following year, not of not paying within the time allowed under the extension. What Your Honor suggests really is at the heart of this other half of our argument. When the IRS gives you notices saying, if you don't pay on time, there's all sorts of bad things happen to you. They got a letter, but what about the publication? Did they actually – where in the record does it indicate that he read that – was cognizant of that publication? He read it or whatever. Your Honor, that publication that we quote was presented to the district court by the defense in a pretrial motion and then again in a motion for new trial. And it – and that – that reliance was posited by defense counsel at trial. And it wasn't presented as part of the evidence to the jury. The defendant testified to all of the people that he spoke to, and none of them ever gave him any idea that it could be a crime if you file an honest return and don't engage in fraud and don't do anything to evade taxes to just not pay on time. Were those people experts in the area? Were they – He testified they were CPAs and tax attorneys. Now, there wasn't an advice of counsel defense presented here, primarily, I think, because those people were not called by the defense to testify. But we're talking about the defendant's state of mind. And if there are – if the IRS – even the circular that the government cites in their response to a brief is a circular that tells the person you could be liable to criminal sanctions for certain kinds of tax violations, but not this one. But did he ever pick up the telephone and say, let me talk to the Internal Revenue Service's general counsel? There is no evidence that he did, and I'm quite sure that he did not. He talked to a bunch of CPAs and tax lawyers. Right. And, Your Honor – Who otherwise remain anonymous and who didn't testify and so forth. So the jury could believe or disbelieve that testimony, couldn't it? The jury could believe or disbelieve it, but the jury instructions didn't permit them to acquit if they believed it. The jury instructions said if he knew he had a duty, the fact that he didn't think it was a crime is irrelevant. And that was the government's point. I even quoted in the brief where the government said, so you're pleading guilty because you admit you didn't pay and you knew you were supposed to pay on time? That's really what's at the heart of this aspect of our appeal, is does the government have to prove that a person who doesn't pay on time thinks that what he's in for is penalties and interest, but in fact can be prosecuted criminally, do they have to know that for the failure to pay to be willful under Cheek and Ratzlaff? And, you know, even – Cheek does say that the knowledge to be willful, the person has to know that he's – I'm sorry, go ahead. Cheek is predicated on complexity. Your Honor, Cheek is predicated on the complexity, but it talks about tax violations. What's complicated about failing to pay on time? Well, what's complicated about failing to pay on time is that I would submit that probably everyone in this Court, everyone on the Court staff, knows someone or has a relative who hasn't paid their taxes on time and fully believes that it's not criminal as long as they filed an honest tax return, got an extension, and paid when they could. I have to say I'm not prepared to accept that assumption. I don't know anybody who thinks the government lets you go off and not pay as you choose. Your Honor, I don't think paying huge penalties and interest is going off and not paying as you choose. But the real question is, where is the public knowledge that it's a crime to not pay on time? Well, it's payment the government ultimately cares about. People get sent off to jail for tax evasion. That's common knowledge. And this is not an evasion case, Your Honor. But the point is, tax laws are enforced by criminal law. I don't know why we should draw the inference that people are going to be surprised by the proposition that criminal laws enforce compliance with tax code. Each of the cases that we cite are cases where the United States Supreme Court or this Court has said that when, under the circumstances a person would be surprised by it, the government has a higher duty to prove that they knew it was criminal law, the consequences were criminal. And that's exactly my point. Why should we think someone's going to be surprised by this? This is not behavior that people would customarily think is okay. Again, okay is not like the structuring situation where, sure, you may be aware that you can't structure a financial transaction because banks have to be or you are aware that banks have to submit the currency transaction reports, so you structure. But there's a second level where you get caught, namely that structuring is criminal. You look at the law in one part and it says this is an obligation that the banks have to perform. And I really think that that situation is different. And it's sort of a two-tier level of understanding that I just don't see exists here. Pretty much anyone could say, well, I realized it wasn't right to structure, but I didn't know it was a crime. And my reading of Ratzlaff is that the Supreme Court said you have to – the government has to prove you knew it was a crime in order to be guilty of engaging in that conduct to be convicted of the crime. So – You used up 10 minutes. Did you want to save some for your time? I'd like to defer to Mr. Braun just to address briefly some of the sentencing questions and then to reserve whatever he leaves me for rebuttal. Thank you. Okay. And I didn't mean to interrupt you, Your Honor, if you weren't done questioning me. Thank you. Just briefly, in the brief they mentioned that the A1s lived extravagantly, spent millions of dollars and, well, all types of things that are beyond my comprehension. And then you'd wonder, well, why, if that's the case, the government didn't charge evasion, because if there's – if they're getting all this money in and they're not paying their taxes, isn't there a good evasion charge? And then they could be convicted of evasion and sentenced on evasion. And the fact is, is that, as the brief indicates, A1 had a history, prior to making this money, of constantly not paying his taxes on time and then paying the penalties and interest sometimes beyond sanity because it would be paid quite cheaply.    So you're saying, well, he's gone four years without paying and then he got a notice to appear before the grand jury or produced books and records, or do I misread the record? That's correct. And what happened was there, the reason the government wouldn't charge evasion was because A1 could show that even though he hadn't paid the taxes, that he had a record of not paying his taxes on time. And that's what the trial was about, which he had no defense to, because he didn't pay it on time. He testified that he didn't think it was a crime, but that he thought he had a legal obligation. So then what happens, he then gets sentenced for evasion, because they then take the amount of money that wasn't paid and say, well, that's the loss. No, he got sentenced at the felony level. Exactly. The deadline calculation says look to the amount of the tax loss and compute in the base offense level. That wound up at a higher level than the statutory maximum and didn't take the – he still got sentenced at a misdemeanor level, not at a felony level. Well, but the – it seems to me, I mean, this is up to the Court, but that if you're convicted of not paying your taxes on time, that does not imply any particular loss. The loss would be if you were paid the tax. Government get the money? What? Did the government ever get the money? No, they didn't get the money because they're not – Sounds like a loss to me. Well, but for a number of reasons. One was because – that was the reason they didn't charge evasion. If you get convicted of tax evasion, you don't get a get out of pay taxes card. You're still obligated to pay the taxes. Same thing's true here. He's always obligated to pay the taxes. And in the meantime, the government has suffered the loss. Right. But they did not suffer the loss because of the crime of not paying your taxes on time. Sure they did. They didn't get the money when he had it. He had it at the time, and then his business went bankrupt or whatever, and now he's broke. The government's lost a couple million dollars in tax revenue. Well, the reason that they – in the real world, they didn't charge that was because that, as we indicated in the – Well, what difference does the reason they charge or not? The prosecutors have got vast discretion to charge whatever they think they can prove. They don't have to charge every crime that they think they can prove. They may want to make a test case out of this. They could have charged both, and then they would have had evasion and not paying on time. But to take a defendant and say, okay, here's what we're charging you with, which is not paying your taxes on time, which would have been the same if he had paid his taxes on April 20th and come into court after four years of paying his taxes a month late. But the government would have lost money. Zero loss in that case. So the sentence wouldn't have been the same. But the crime would have been the same. Yeah. But your objection is that the calculation of loss is excessive only because you say the government didn't lose. Your illustration actually demonstrates how the government did lose, because if he had paid on April 20th, they would have had the cash. And what happened is they didn't have the cash. But they didn't lose because of paying taxes late. And I think what my co-counsel – I think what my co-counsel is saying is that if he had lost because he didn't pay them on time when he had the money, and wherever it went to, it's gone, and now he's impecunious or whatever, he's on – the government's never going to get that money. If he paid the money on time, we wouldn't be here. That's the whole point. I think that's what caused the loss. I'm sorry. I have a real problem seeing your – the break of the causal chain there that you're making. Well, the – as we indicated in documents at the trial or the sentencing level, there's 200,000 Federal employees who haven't paid their taxes. Well, you know what? The image that comes to mind is, you know, I expect everybody in this room has gone 5, 6 miles over the limit and never gotten stopped. But if somebody comes roaring down the expressway at 140 miles an hour in a Maserati, he's going to get stopped. And isn't that the metaphor that happened here? He should be charged with what he did. He didn't pay on time. And it's the on-time element that we're focusing on. In other words, it wasn't – that misdemeanor does not require any certain amount. And that if you'd be guilty of that offense, whether you paid the money or not. I was talking about the exercise of prosecutorial discretion. Obviously, I don't accept your argument in that regard. Somebody was picked upon unlawfully. That's probably the central problem in this particular case in the real world. This is a man who's had a – having a fight with the government over other issues, and he's sitting in prison right now because he refuses to testify. Well, that's not part of the record. I don't think that's part of the record. It's not part of the record. But when you have a statute that says every violation of the IRS code is a misdemeanor. Well, remember, they got Al Capone not for the killings, but for the tax evasion. I think a tax evasion, not for not paying his taxes on time, it gives so much discretion to the government that it becomes almost meaningless. And so it is. There's so much discretion to the government that the government's own circulars, as co-counsel pointed out, doesn't point out the fact that it's a crime. There's no evidence that he relied upon that circular. Is there? You're correct, but there is evidence that he testified that for years he had been doing this, and then he had been paying late fees to the IRS. He had been in contact with the IRS, and no one from IRS ever said to him, by the way, it's a crime. That's what the statute of limitations is all about. You got to pass on the earlier years, and they got him for the years within the statute. It's not an issue of the statute of limitations. It's an issue of what his mental state is over years of dealing with the government on a similar issue, thinking, well, okay, for years I've been paying not on time. The next year I pay the penalties in interest, and no one ever says anything. It goes on year after year. He doesn't really think about the statute of limitations. He just knows about his interaction with the government. He knows he's getting away with something. Self-help. Bootstrapping. He could have picked up the phone, could have gone down to the IRS and said, hey, isn't that you guys have any problem with this? And they say, no, we don't. Do you think it's constitutional to switch to a defendant when the government has to prove that knowledge of something is a criminal act to say you're guilty because you didn't call up the general counsel of the IRS? It seems to me that would be shifting a burden to a defendant. No. I think any citizen has a fundamental obligation to find out what the law is in his own self-interest. As I understand, I don't know, I'm not a tax lawyer, that the IRS code is enormous and they've got this general. Right. But it's not enormous in terms of the date that the taxes are due. That's the same section. But I think it's – but I think if you went out on the street and said to someone, do you have to file honest taxes, they would say yes. Do you have to file your tax returns on time, they would say yes. If you said, do you go to jail if you don't pay your taxes, they would say, that's a debtor's prison. We've never had that in the U.S. I guess I talk to different people than you do. Excuse me? I've never heard anybody give that response. Well, I have. I was with you on the first two, but the third one. I've had a federal judge say, is that a crime? Is that a crime to pay taxes late on a related case? Okay. We are questions of taking over time, so thank you very much for your argument. Ms. Olson. Good morning. Got your taxes paid to you, Ms. Olson. Good morning. May it please the Court, Elizabeth Olson for the government. There's just a few points that I'd like to make. In Cheek v. United States, the Supreme Court held that the government, in order to satisfy the element of willfulness, has to prove three things, that the law imposes a duty on the defendant, that the defendant knew of this legal duty, and that the defendant voluntarily and willfully violated the legal duty. Or intentionally. Does it say willfully or intentionally? Voluntarily and intentionally. Thank you. And that the defendant voluntarily and intentionally violated that legal duty. Now, the defendants argue in their briefs and here that Cheek left open the question of whether there's a fourth thing that the government has to prove, whether the government also has to prove that the defendant knew that his voluntary and intentional violation of this known legal duty carried criminal consequences, criminal penalties. Right? And the idea that Cheek leaves open that question, respectfully, no, it doesn't. Cheek says here are the three things the government has to prove. One, two, three. And the idea that that leaves open the question of whether there's some secret unspoken fourth thing defies logic, and the defendants actually point to not one single sentence in any case from any court to support that assertion. And I'm sort of baffled. I never fully understood the structuring circumstance. The idea that the bank, we know that the – I know that the bank will be filing a report if I hit $10,000 or more. So I go in and get a bunch of $9,500 cashier's checks. And what – and this was – this is Ratzlaff. That's the Ratzlaff decision. Ratzlaff, yeah. And what the Court said in Ratzlaff is because – and that was sort of based on the complexity, but it actually makes a lot of sense. Right? We know that the banks have this obligation, that if you deposit $10,000 in cash, that triggers a whole bunch of paperwork on behalf of the bank. The government's going to find out about it. Right. Right. Or what – or your ex-spouse might find out about it. Or, you know, who knows? Or you might be subject to an audit. Maybe the IRS will start poking around. Right? And so a defendant – so an individual might say, well, I know that if I deposit $10,000, it triggers all of this paperwork. So you know what? I'm just going to deposit $9,000 to avoid all of that mess. Right? And what the Court said in Ratzlaff is that in order to convict the defendant of willfully structuring transactions in violation of the – of that statute is that the government has to prove not only that the defendant knew that the bank had a duty to do all of this paperwork, the government had to prove that the defendant knew that he had a duty not to try to sneak around that requirement, try to – try to avoid that. Try to deprive the bank of the opportunity to do its job. And so even then, this definition of willfully is the same. The government had to prove that the law imposed a duty on the defendant not to structure these transactions, that the defendant knew that the law imposed a duty on him not to do that. I see. Not to do it. Okay. And that he intentionally did it. Because in Ratzlaff, the district court had – Excuse me. The difference is here the defendant knew he had a duty to file and pay his taxes on April 15th. Yes. In Ratzlaff, the defendant knew that the bank would be required to do it, but he did not know that he could not do it. Yes. He did not – the government did not – the district court's jury instructions did not require the government to prove that the defendant knew that he had a duty not to, to refrain from – Refrain from structuring. Structuring these transactions. It's not that he didn't know it was criminal. Exactly. It was that he didn't know that he couldn't – he had a duty not to do it. Exactly. As a result of – because of the criminal statute. But he did not have to know that criminal penalties could accrue. Exactly. And what the district court – or what the Supreme Court said in Ratzlaff, and they said it four times. They reiterated three or four times. They're holding – we therefore hold that a defendant, in order to be convicted of willfully violating the statute, has to know that his actions of trying to get around these reporting requirements was unlawful. Now, the defendants argue in their briefs – That was what the consequences might have been. Exactly. The defendants argue in their briefs that unlawful means criminal, and respectfully, it doesn't. You know, that's not how Black's Logic scenario defines it. I mean, what the Court has said over and over in Sheik, in Ratzlaff, is that willfulness means that there's a duty and that the law imposes a duty, that there is a legal duty, and that the defendant violated that legal duty. Now, taking one step back further, it seems that what the defendants were arguing in the district court and are arguing here, that yes, they knew that their taxes were due April 15th, but that somehow they believed that that gave them two options. Right? They could either pay their taxes April 15th, as they were obligated to. Or lift the civil penalties. Or they could go with Plan B, which is not pay your taxes now, pay your taxes later with penalties and interest. And it was enormous penalties and interest that they had been assessed over the years. And that somehow that, you know, that that was the – that was also okay. That wasn't, you know, yes, they had this obligation, but it was okay for them to do it the way it is, the way they did. The problem with that is, given the way the judge gave – instructed the jury, the jury necessarily disbelieved and rejected that theory, because the district court instructed the jury, Instruction No. 10, a defendant does not willfully violate the tax laws if he or she believes in good faith that he or she is acting within the law. Therefore, if a defendant believed that what he or she was doing was in accord with the tax statutes, he or she cannot be said to have the criminal intent to willfully fail to pay tax. So if the jury had actually believed that these defendants believed that it was okay under the law for them to miss the April 15th obligation and instead pay penalties and interest, and if, you know, if – obviously, we don't have to prove that they intended to pay. As it turns out, you know, they haven't paid. They still owe $2.4 million in just the tax, not the penalties and the interest, and they never did pay that. But if the jury believed that they thought that they honestly believed that what they were doing was okay, given the instructions as the judge read them, they could not have convicted these defendants. Just two more things that I want to say about this IRS publication. And as you point out, Judge Carr, there is absolutely nothing in the record to suggest that these defendants received or read or relied on this publication. It was attached to a pretrial motion to dismiss. But with that motion to dismiss, there were no affidavits or declarations from either defendant saying that they had received or relied on that. But even if they had, I would just note that that publication, and defendants included it in the excerpt, IRS publication 594 is called the IRS collection process. And on the front cover, it says, this publication tells you the steps the IRS may take to collect your balance due account. And it goes through, the pamphlet goes through all the steps that the collection that IRS can use to collect. It's narrow and limited. It is not a publication entitled, here are the consequences to you of not paying your taxes, and here are all the things that could happen to you. That's just simply not what that publication is. So even to the extent, I actually thought, you know, if there's, I think on the Ninth Circuit website, I think there's a little memo about putting together your brief. You know, here's some tips and what needs to be with all the things from Rule 28. And if somebody filed, you know, complied with that and didn't submit an excerpt of record and then said, well, wait a second, you know, how could, there's this whole thing of, well, that's not what the document is for. I mean, it isn't here are your obligations as an appellate lawyer. It's here's what has to be in the brief. So that's the, that's the point that I would make there. And with respect to sentencing, the one point that I would make with the sentencing is that these defendants, you know, their argument is that they were sentenced as if they had been convicted of tax evasion. As a factual matter, they simply were not. 12 months run consecutive three or four times. Well, you know, they got the stacked misdemeanor, misdemeanor sentences. Mr. Awan got 48 months. Their guideline sentence, and it is true that the guideline used for the misdemeanor is the same as the guideline used for the felony. But Mr. Awan's guideline sentence based on the amount of tax loss was 63 to 78 months, I think. And Mrs. Awan's was also more than, more than the 50 months. Yes, Howard's was 63 to 78, and Linda's was 51 to 63. And the judge was not allowed to give them that guideline sentence because these were misdemeanors and not felonies. And then, of course, because the Court found that Howard Awan had committed perjury when he testified and wanted to reflect that relative culpability and could not do that by increasing Howard's sentence, he ended up reducing Mrs. Awan's sentence another 12 months. Again, if these had actually been felonies rather than misdemeanors, those sentences would very likely have been higher. Any further questions? No. Thank you, counsel. Thank you. And you used up your time in your opening, so in fact a little more than your time, so the case will be submitted for decision. No, not today. Thank you.
judges: Carr, Thomas, Clifton